UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL DINO FORZANO AND KATRINA ANN ALBERT<br><br>Plaintiffs,<br><br>v.<br><br>THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, JETBLUE CORPORATION, and AIRWAY, LLC.<br><br>Defendants. | Case No. 1:25-cv-01153-JAV<br><br>**AMENDED COMPLAINT** |

Plaintiffs Michael Dino Forzano and Katrina Ann Albert, by their attorneys, Disability Law United, complain and allege as follows:

**PRELIMINARY STATEMENT**

1. This action arises from the discriminatory denial and delay of access to airport security screening area based on policies and practices imposed on blind guide dog users, and their companions, as a condition of entering the Transportation Security Administration ("TSA") line at JFK Airport Terminal 5. Plaintiffs Michael Dino Forzano ("Mr. Forzano") and his partner and travel companion Katrina Ann Albert ("Ms. Albert") are frequent air travelers who seek declaratory and equitable relief, damages, penalties, and attorney's fees against Defendants The Port Authority of New York and New Jersey ("Port Authority"), JetBlue Corporation ("JetBlue"), and Airway LLC ("Airway") for discriminating against them and limiting their access to a TSA Pre-Check line at JFK airport Terminal 5 on the basis of disability in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq.; Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794 et seq.; the New York Human Rights Law, N.Y. Exec. L. § 290 et seq.; The New York Civil Rights Law, N.Y. Civ. Rights L. § 40 et seq.; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq.

1

## JURISDICTION AND VENUE

2. Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiffs' claims, as Defendants violated Plaintiffs' rights under the ADA and Section 504.

3. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiffs' state and city claims as they are so related to the federal claims that they form part of the same case or controversy.

4. Pursuant to 28 U.S.C. §§ 1343, 2201 and 2202, This court has jurisdiction to issue a declaratory judgment and injunctive relief.

5. Pursuant to 28 U.S.C. § 1391(b)(1), venue is proper in the United States District Court for the Southern District of New York, because Defendant Port Authority is headquartered in this District.

## PARTIES

6. Plaintiffs Mr. Forzano and Ms. Albert, at all times relevant hereto, were and are residents of the borough and county of the Bronx in New York City, in the state of New York.

7. Defendant, Port Authority is an instrumentality of the states of New York and New Jersey and is the lessee and operator of JFK airport. It is headquartered in New York County at 4 World Trade Center, 150 Greenwich Street in New York City, New York.

8. Defendant, JetBlue is the Terminal MAnager of JFK Terminal 5 and is headquartered in Queens County at 27-01 Queens Plaza North in Long Island City, New York.

9. Defendant, Airway contracts with one or more Defendants to provide personnel at JFK Terminal 5 and is headquartered in Nassau County at 15 Clinton Ave in   Rockville Centre, New York.

## STATEMENT OF MATERIAL FACTS

10. John F. Kennedy Airport ("JFK") Terminal 5 is a public facility where air-travel passengers and other members of the general public are permitted to go.

11. Defendants Port Authority is a recipient of general and/or specific federal financial assistance for the operation and management of services provided at JFK Terminal 5.

12. On information and belief, Jet Blue and Airways are each recipients of general, and/or specific federal financial assistance for the operation and management of services provided at JFK Terminal 5.

13. The Port Authority is responsible for the operation and management of JFK and all of its terminals through a long-term lease with New York City.

14. JetBlue is the "Terminal Manager" responsible for the management and operation of JFK Terminal 5 through a contractual or other arrangement with the Port Authority.

15. Airways is responsible for providing gatekeeper services and personnel, including "Gatekeepers" at JFK Terminal 5 through a contractual or other arrangement with JetBlue and/or the Port Authority. "Gatekeepers" are personnel that check boarding and other passes that permit pass-holders to enter TSA security screening lines at JFK Terminal 5.

16. Plaintiffs are informed and believe that Airway Gatekeepers at JFK Terminal 5 are and were instructed to deny TSA-security line entry to passengers accompanied by service animals if their boarding pass does not denote their use of a service animal.

17. Plaintiff Michael Forzano is blind and hard-of-hearing. He uses a guide dog trained by The Seeing Eye as a mobility aid.

18. The Seeing Eye is a professional training center for guide dogs and handlers in Morristown, NJ.

19. At all times relevant to this action, Mr. Forzano's guide dog was wearing a guide harness identifying it as having been trained by The Seeing Eye.

20. Plaintiff Katrina Albert is Mr. Forzano's partner.

21. At all times relevant to this action, Mr. Forzano and Ms. Albert had current Known Traveler Numbers permitting them access to expedited "Pre-check" TSA security lines at U.S. airports, including JFK Terminal 5. The "Pre-check" TSA security line is a service or program provided at JFK Terminal 5 that allows pre-screened passengers to enter a screening line which allows for smoother security screening process with no need to remove shoes, laptops, 3-1-1 liquids, belts or light jackets. According to the TSA website about 99% of Pre-Check passengers wait less than 10 minutes for screening. JetBlue Airlines is a participating airline in the Pre-Check program and JFK Airport has made the Pre-Check program available in JFK Terminal 5.

22. Mr. Forzano and Ms. Albert, pre purchased tickets, traveled to Fort Lauderdale-Hollywood International Airport on JetBlue flight 1401, which was scheduled to depart from JFK Terminal 5 on Sunday, February 18, 2024.

23. Before leaving for the airport, Mr. Forzano and Ms. Albert checked in online and saved their mobile boarding passes to their phones so they could go directly to the TSA Pre-check line. Had they not pre-printed their boarding passes, they would have had to make another stop in the airport at a kiosk or service desk to print their boarding pass, a process that often requires waiting in line behind passengers checking bags or engaging in other activities requiring the assistance of a service representative.

24. When they arrived at JFK Terminal 5, Mr. Forzano, guided by his guide dog, and Ms. Albert went directly to the TSA Pre-check line entry point. There, they were required to and presented present their boarding passes to the Airway Gatekeeper in order to enter the TSA Pre-check security line. They presented their pre-printed boarding passes to the Airway Gatekeeper.

25. The Airway Gatekeeper denied Mr. Forzano and Ms. Albert entry to the TSA pre-check line, although other passengers with pre-printed boarding passes were allowed to enter the line.

26. The Airway Gatekeeper told them the reason for denial was because Mr. Forzano's boarding pass did not indicate that he was traveling with a service animal.

27. Mr. Forzano explained that he had properly completed all of the air carrier's required advanced-notice procedures, had been approved to travel with his guide dog, and showed the approval receipt to the Airway Gatekeeper.

28. The Airway Gatekeeper refused to let allow Mr. Forzano and Ms. Albert to enter the pre-check line without an indication on Mr. Forzano's boarding pass that he was traveling with a service animal, stating that it was airport policy.

29. The Airway Gatekeeper told them that they would have to find an air carrier agent to fix Mr. Forzano's boarding pass before the Airway Gatekeeper would let him through.

30. The Airway Gatekeeper did not offer to assist Mr. Forzano in finding an air carrier agent.

31. After some time, Mr. Forzano was eventually able to find an air carrier agent who printed a paper boarding pass for him that indicated he was traveling with a service animal. By the time Mr. Forzano was able to return to the Airway Gatekeeper and enter the pre-check line, more than forty-five minutes had elapsed.

32. Mr. Forzano and Ms. Albert had arrived at JFK Terminal 5 with enough time to clear TSA pre-check, get a snack in the terminal, make their way through the busy airport and reach their gate in time to sit and relax before boarding their flight.

33. Instead, due to the above-described denial, they were delayed more than forty-five minutes, were unable to stop anywhere in the terminal, and had to rush to make their flight.

34. At all times Mr. Forzano's dog was under his control and was obviously guiding him.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Disability in Violation of Title II of the ADA

35. Plaintiffs hereby reallege and incorporate each and every allegation contained in this

Complaint with the same force as though separately alleged herein.

36. As a department, agency, special purpose district, or other instrumentality of a state or states, the Port Authority is a public entity subject to Title II of the ADA 42 U.S.C.§ 12131(1)(b), 28 C.F.R. § 35.104.

37. As a public entity subject to Title II of the ADA, the Port Authority may not, directly or through contractual, licensing, or other arrangements, subject an individual with a disability to discrimination, exclude them from participation in or deny them the benefits of its services, programs, or activities on the basis of disability. 28 C.F.R. §§ 35.130(a) and (b)(1).

38. That prohibition extends to aiding or perpetuating discrimination against a qualified individual with a disability by providing significant assistance to another agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries of the Port Authority's programs. 28 C.F.R. § 35.130(b)(1)(v).

39. The Port Authority also may not, directly or through contractual or other arrangements, utilize criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability. 28 C.F.R. § 35.130(b)(3).

40. The Port authority must make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, including modifications to allow use of a service animal by a qualified individual with a disability. 28 C.F.R. §§ 35.130(b)(7)(i) and 136(a).

41. Those modifications must ensure that individuals with disabilities are permitted to be accompanied by their service animals in all areas of the Port Authority's facilities where members of the public, participants in its services, programs or activities, or invitees, as relevant, are allowed to go. 28 C.F.R. § 35.136(g).

42. They must also ensure that no documentation is required of individuals with disabilities who use service animals, such as proof that the animal has been certified, trained, or licensed as a service animal. 28 C.F.R. § 35.136(f).

43. They may only allow the making of two inquiries to determine whether an animal qualifies as a service animal – whether the animal is required because of a disability, and what work or task the animal has been trained to perform. Generally, even those inquiries are prohibited when it is readily apparent that the animal is trained to do work or perform tasks for an individual with a disability (e.g., the dog is observed guiding an individual who is blind). 28 C.F.R. § 35.136(f).

44. As a blind person with a valid boarding pass, Mr. Forzano is and was an individual with a disability, and was qualified to enter the TSA security line at JFK Terminal 5 on February 18, 2024. 42 U.S.C. §§ 12102, 12131(2); 28 C.F.R. § 35.104.

45. Mr. Forzano's guide dog, as a dog trained to assist Mr. Forzano with navigation, is a service animal covered by Title II of the ADA. 28 C.F.R. § 35.104.

46. Mr. Forzano had a valid boarding pass and was traveling with his partner and companion Ms. Albert on February 18, 2024.

47. On February 18, 2024, Mr. Forzano was prohibited from entering the TSA Pre-Check line with his guide dog because his boarding pass did not include documentation indicating that his guide dog is a service animal.

48. It is readily apparent to anyone observing Mr. Forzano that he is blind and that his guide dog guides him.

49. The Port Authority has a contractual or other arrangement with JetBlue to manage the programs and services of JFK Terminal 5.

7

50. That contract or other arrangement either includes the provision of Gatekeepers by Airway, or permits JetBlue to subcontract or otherwise arrange for the provision of Gatekeepers, which it has done with Airway.

51. An Airway Gatekeeper was thereby empowered by the Port Authority, directly or through contractual or other arrangements, to control access to the TSA security line at JFK Terminal 5, and under that authority subjected Mr. Forzano to discrimination and excluded him from participation in and denied him the benefits of entry to the TSA security line on the basis of his disability, in violation of Title II of the ADA.

52. The Port Authority aided or perpetuated discrimination against Mr. Forzano by providing significant assistance to JetBlue and/or Airway, both of whom discriminate on the basis of disability against qualified individuals with disabilities who use service animals by imposing additional requirements and limits on service animal users, including requiring the use of on-airport ticket printing, and imposing additional documentation requirements on Mr. Forzano, in order for him to gain entry to the TSA security line at JFK Terminal 5, in violation of Title II of the ADA.

53. The Port Authority, through a contractual or other arrangement with JetBlue and/or Airway permitted the refusal of entry to the TSA security line without documentation criteria for a service animal; and permitted a method of administration whereby a JetBlue was allowed to require documentation before entry to the TSA security line that is not required of other passengers, having the effect of subjecting Mr. Forzano, and other qualified individuals with disabilities who use service animals, to discrimination; and utilizing a criteria or method of administration that has the effect of discrimination in violation of the ADA.

54. The Port Authority failed to modify policies, practices, or procedures to prevent Gatekeepers from requiring documentation for service animals, in violation of Title II of the

ADA, despite the fact that this policy had and has the effect of denying individuals with disabilities who use service animals, and their traveling companions, the opportunity and convenience of pre-printing a boarding pass and avoiding the delay of obtaining boarding passes at the airport.

55. The Port Authority may not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association. 28 C.F.R. § 35.130(g).

56. Ms. Albert had a valid boarding pass and was traveling with her partner and companion Mr. Forzano on February 18, 2024.

57. Ms. Albert was not permitted to enter the TSA Pre-Check security line with her partner and traveling companion Mr. Forzano because he is blind, in violation of Title II of the ADA.

58. Defendant Port Authority's violations were either intentional or deliberately indifferent to Plaintiffs' rights.

59. As a result of Defendant Port Authority's violations, Plaintiffs suffered damages for which Defendant is liable. 42 U.S.C. § 12133.

60. Legal relief is insufficient to address Plaintiffs' harm.

61. In addition to nominal, compensatory, and equitable relief, Defendant is liable for Plaintiffs' reasonable attorneys' fees and costs. 42 U.S.C. § 12205.

## SECOND CAUSE OF ACTION

### Disability Discrimination in Violation of Section 504, 29 U.S.C. § 794
### All Plaintiffs Against All Defendants

62. Plaintiffs hereby reallege and incorporate each and every allegation contained in this Complaint with the same force as though separately alleged herein.

63. This Count is brought under Section 504, 29 U.S.C. § 794 et seq. Reference is made to the Rehabilitation Act in its entirety.

64. Section 504 prohibits disability-based discrimination by recipients of federal financial assistance. 29 U.S.C. § 794(a).

65. As a department, agency, special purpose district, or other instrumentality of a state, Defendant Port Authority is a recipient of all of whose programs and services are covered by Section 504. 29 U.S.C. § 794(b)(1); 49 C.F.R. § 27.5.

66. As a facility that has been constructed, expanded, altered, leased or rented, or otherwise acquired, in whole or in part, with Federal financial assistance, all of the programs and services provided at JFK Terminal 5 are subject to the requirements of Section 504. 29 U.S.C. § 794(b)(3)(B); 49 C.F.R. § 27.7(b)(6).

67. As private agencies, institutions, organizations, or other entities to whom Federal financial assistance from the Department of Transportation is extended, directly or through another recipient, including any successor, assignee, or transferee thereof, for the operation of JFK Terminal 5, Defendants JetBlue and Airway are recipients whose programs and services respecting the operation of JFK Terminal 5 are covered by Section 504. 29 U.S.C. § 794(b)(3)(B); 49 C.F.R. § 27.5.

68. The Port Authority as operator of the JFK Airport, and a recipient of federal financial assistance, is responsible for ensuring that the facilities and services it provides there, directly or indirectly, do not exclude, deny or otherwise subject individuals with disabilities to discrimination. 29 U.S.C. § 794(a); 49 C.F.R. § 27.7(a).

69. Defendants Jet Blue and Airway, as contractors with the Port Authority, and recipients of federal financial assistance for the management and operation of JFK Terminal 5, either directly or through the Port Authority, are responsible for ensuring that the services and facilities they provide there do not exclude, deny or otherwise subject individuals with disabilities to discrimination. 29 U.S.C. § 794(a); 49 C.F.R. §§ 27.7(a) and (b)(6).

70. In order to comply with the anti-discrimination requirements of Section 504, all Defendants must comply with the requirements of the ADA. 49 C.F.R. §§ 27.19(a), and 71(b).

71. As a blind person with a valid boarding pass, Mr. Forzano is an individual with a disability, and was qualified to enter the TSA security line at JFK Terminal 5 on February 18, 2024. See 28 C.F.R. §§ 41.31–32; 49 C.F.R. § 27.5.

72. As a blind person with a valid boarding pass, Mr. Forzano is an individual with a disability, and was qualified to enter the TSA Pre-Check line at JFK Terminal 5 on February 18, 2024. See 28 C.F.R. §§ 41.31–32; 49 C.F.R. § 27.5.

73. The Airway Gatekeeper assigned to the TSA Pre-Check line at JFK Terminal 5 required Mr. Forzano to present documentation for his service animal to enter the TSA Pre-Check line at JFK Terminal 5, and denied him entry without it, in violation of Section 504.

74. That Airway Gatekeeper assigned to the TSA Pre-Check line at JFK Terminal 5 denied Ms. Albert entry to the TSA Pre-Check line in the company of her partner and traveling companion, Mr. Forzano, because he is blind and uses a guide dog service animal, in violation of Section 504.

75. Airway was instructed by JetBlue, in its capacity as manager of JFK Terminal 5, to require service animal documentation before permitting qualified individuals with disabilities and their companions to enter TSA Pre-Check lines, in violation of Section 504.

76. The Port Authority, as the operator of JFK Terminal 5, allowed JetBlue and Airway to require service animal documentation of qualified individuals with disabilities and their companions to enter TSA Pre-Check lines, in violation of Section 504.

77. Defendants' violations were either intentional or deliberately indifferent to Plaintiffs' rights.

78. As a result of Defendants' violations, Plaintiffs suffered damages for which Defendants are liable. 29 U.S.C. § 794a(a)(2).

79. Legal relief is insufficient to address Plaintiffs' harm.

80. In addition to nominal, compensatory, and equitable relief, Defendants are liable for Plaintiffs' reasonable attorneys' fees and costs. 29 U.S.C. § 794a(b).

## THIRD CAUSE OF ACTION

### Disability Discrimination in Violation of Title V of the ADA
### All Plaintiffs Against Defendants JetBlue and Airway

81. Plaintiffs hereby reallege and incorporate each and every allegation contained in this Complaint with the same force as though separately alleged herein.

82. Private entities may not interfere with any individual in the exercise or enjoyment of any right granted or protected by Title II of the ADA. 42 U.S.C. § 12203(b); 28 C.F.R. § 35.134(b).

83. By directly or indirectly requiring service animal documentation for Mr. Forzano to enter the TSA Pre-Check line at JFK Terminal 5, and directly or indirectly denying him such entry, Defendants interfered with Mr. Forzano's exercise or enjoyment of Title II-protected rights, innviolation of Title V.

84. By directly or indirectly denying Ms. Albert entry to the TSA Pre-Check line with her partner and traveling companion, Mr. Forzano, because he is blind and uses a guide dog, Defendants interfered with Ms. Albert's exercise or enjoyment of Title II-protected rights, in violation of Title V.

85. Defendants' violations were either intentional or deliberately indifferent to Plaintiffs' rights.

86. As a result of Defendants' violations, Plaintiffs suffered damages for which Defendants are liable. 42 U.S.C. § 12203(c).

87. Legal relief is insufficient to address Plaintiffs' harm.

88. In addition to nominal, compensatory, and equitable relief, Defendants are liable for Plaintiffs' reasonable attorneys' fees and costs. 42 U.S.C. § 12205.

## FOURTH CAUSE OF ACTION

### Disability Discrimination in Violation of N.Y. Human Rights Law
### Plaintiff Michael Forzano against Defendants JetBlue and Airway

89. Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

90. This Count is brought under the NYHRL, N.Y. Exec. Law § 290 et seq. As an airdrome, station, or terminal for public conveyances in the air, JFK Terminal 5 is a place of public accommodation subject to the NYHRL. N.Y. Exec. L. § 292(9).

91. As a blind guide dog user, Mr. Forzano is a qualified individual with a disability under the NYHRL. N.Y. Exec. Law § 292(21).

92. As corporations or other legal representatives, Defendants JetBlue and Airway are persons subject to the requirements of the NYHRL. N.Y. Exec. L. § 292(1).

93. As persons engaged in activities covered by the NYHRL, JetBlue and Airway may not deny access or otherwise discriminate against a blind person because they are accompanied by a professionally trained guide dog. N.Y. Exec. L. § 296(14).

94. Neither may JetBlue or Airway, directly or indirectly, refuse, withhold from or deny a person any of the accommodations, advantages, facilities or privileges of JFK Terminal 5 because of that person's disability. N.Y. Exec. L. § 296(2)(a).

95. By requiring documentation on his boarding pass to enter the TSA Pre-Check line, and denying him access to the TSA Pre-Check line because he is blind and uses a guide dog, JetBlue and Airway violated the NYHRL.

96. As a result of Defendants' violations, Plaintiff suffered damages for which Defendants are liable. N.Y. Exec. L. § 297(9).

97. Defendants are also liable for statutory civil penalties for their violations. N.Y. Exec. L. § 297(9).

98. Legal relief is insufficient to address Plaintiffs' harm.

99. In addition to legal, equitable, and statutory relief, Defendants are liable for Plaintiffs' reasonable attorneys' fees and costs. N.Y. Exec. L. § 297(10).

## FIFTH CAUSE OF ACTION

### Disability Discrimination in Violation of N.Y. Civil Rights Law
### Plaintiff Michael Forzano against Defendants JetBlue and Airway

100. Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

101. As a building to which the public is invited or permitted, JFK Terminal 5 is a public facility covered by the NYCRL. N.Y. Civ. Rights L. § 47(2).

102. As private persons or legal entities, JetBlue and Airway may not impose any conditions or restrictions not specifically set forth in the NYCRL on blind persons accompanied by guide dogs, nor may they deny such persons admittance to and/or the equal use of and enjoyment of any public facility. N.Y. Civ. Rights L. §§ 47(a) and 47-B(2).

103. Neither JetBlue nor Airway may subject a person to any discrimination in their civil rights because of their disability. N.R. Civ. Rights L. § 40-C(2).

104. By requiring documentation for his service animal to enter the TSA Pre-Check line, by denying him access to the TSA Pre-Check line without such documentation, and by violating the N.Y. Human Rights Law, JetBlue and Airway violated or aided or incited violation of Mr. Forzano's rights under the NYCRL.

105. JetBlue and Airway are each liable for their violations and are subject to fines therefore. N.Y. Civ. Rights L. §§ 40-D, 47-C(1), and (2).

106. Legal relief is insufficient to address Plaintiffs' harm.

## SIXTH CAUSE OF ACTION

**Disability Discrimination in Violation of New York City Human Rights Law
All Plaintiffs against Defendants JetBlue and Airway**

107. Plaintiffs hereby reallege and incorporate each and every allegation contained in this Complaint with the same force as though separately alleged herein.

108. This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8–101 et seq..

109. As a place where services, facilities, accommodations, advantages or privileges of any kind are extended, offered, sold, or otherwise made available, JFK Terminal 5 is a place of public accommodation under the NYCHRL. N.Y.C. Admin. Code § 8–102.

110. As providers of services, facilities, accommodations, advantages or privileges of any kind, JetBlue and Airway are providers of public accommodation under the NYCHRL. N.Y.C. Admin. Code § 8–102.

111. As organizations, corporations, and/or legal representatives, JetBlue and Airway are persons under the NYCHRL. N.Y.C. Admin. Code § 8–102.

112. As a blind guide dog user, Mr. Forzano is a person with a disability under the NYCHRL. N.Y.C. Admin. Code § 8–102.

113. JetBlue and Airway may not withhold from or deny the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of JFK Terminal 5, including the TSA Pre-Check line, because of a person's disability. N.Y.C. Admin. Code § 8–107(4)(a)(1)(a).

114. Neither may JetBlue or Airway aid, abet, or compel such withholding or denial. N.Y.C. Admin. Code § 8–107(6).

115. JetBlue and Airway are also required to provide reasonable accommodations to the known disability of a person in order to enable them to enjoy the rights protected by the NYCHRL. N.Y.C. Admin. Code § 8–107(15)(a).

15

116. The anti-discrimination provisions of the NYCHRL, including the requirement to provide reasonable accommodations, also protect persons from discrimination based on the disability of a person with whom they have a known relationship or association. N.Y.C. Admin. Code § 8–107(20).

117. JetBlue and Airway are responsible for such violations by their employees, agents, and contractors. N.Y.C. Admin. Code §§ 8–107(13)(a) and (c).).

118. By requiring documentation on his boarding pass to enter the TSA Pre-Check line,, by denying him access to the TSA Pre-Check line because he is blind and uses a guide dog, and by not accommodating his obvious disability by allowing him to proceed into the TSA Pre-Check line with his guide dog, JetBlue and Airway violated the NYCHRL.

119. By preventing Ms. Albert from entering the TSA Pre-Check line with her partner and traveling companion because he is blind, JetBlue and Airway violated the NYCHRL.

120. By telling their employees, agents, or contractors to require service animal documentation on boarding passes to enter TSA Pre-Check lines, JetBlue and Airway violated the NYCHRL.

121. Defendants' actions were in conscious disregard to Plaintiff's rights.

122. As a result of Defendants' violations, Plaintiff suffered damages for which Defendants are liable. N.Y.C. Admin. Code § 8–502(a).

123. Defendants are also liable for punitive damages for their violations. N.Y.C. Admin. Code § 8–502(a).

124. Legal relief is insufficient to address Plaintiffs' harm.

125. In addition to legal, equitable, and exemplary relief, Defendants are liable for Plaintiffs' reasonable attorneys' fees and costs. N.Y.C. Admin. Code § 8–502(g).

**JURY DEMAND**

Plaintiffs demand a trial by jury.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs demand a judgment against Defendants as follows:

A.     Issue a declaratory judgment declaring that the actions of the Defendant, as set forth in this complaint, violated:

(i) Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131 et seq.;

(ii) Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 et seq.;

(iii) Title V of the Americans with Disabilities Act, 42 U.S.C. §§ 12203;

(iv) the New York Human Rights Law, N.Y. Exec. Law § 290 et seq.;

(v) The New York Civil Rights Law, N.Y. Civ. Rights L. 40 et seq.;

(vi) the New York City Human Rights Law, N.Y.C. Admin. Code § 8–101 et seq.; and

(vii) that Defendant's foregoing acts of discrimination against Plaintiff were intentional and willful.

B.     Enjoin and restrain the Defendant and all persons acting on their behalf, or in concert with them, from engaging in such unlawful discriminatory practices;

C.     Enter judgment in favor of Plaintiffs, and against Defendant, for nominal, compensatory, and punitive damages and penalties, as applicable;

D.     Award the Plaintiffs reasonable attorney's fees, interest, and expenses together with expert fees and other costs of this litigation;

E. Award such other and further legal and equitable relief as may be appropriate to redress fully the deprivation of Plaintiffs' rights under the laws cited herein, to prevent their recurrence in the future, and to protect others from such unlawful behavior; and

F. Grant such other and further relief as the court deems appropriate to be determined at trial.

Dated: February 10, 2025

Respectfully Submitted,

 s/ Albert Elia
Albert Elia, Bar No. 6034813
DISABILITY LAW UNITED
196 Utica Ave., #1011
Brooklyn, NY 11213
(303) 757-7901
aelia@dlunited.org